UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| INTERNATIONAL PAPER COMPANY, | : | Case No. 1:11-cv-910 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| DAVID G. GOLDSCHMIDT, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY: (1) DENYING DEFENDANT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION; (2) DENYING DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER VENUE; (3) DENYING
DEFENDANT'S MOTION TO CHANGE VENUE; AND (4) GRANTING IN PART
AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOR
FAILURE TO STATE A CLAIM (DOC. 13)**

This civil action is before the Court on Defendant David Goldschmidt's Motion to

Dismiss for Lack of Personal Jurisdiction, Improper Venue, and Failure to State a Claim,

or in the Alternative for Change of Venue. (Doc. 13). Defendant International Paper

Company ("IPC") filed an Opposition to Defendant's Motion to Dismiss. (Doc. 19).

Defendant filed a Reply Brief in Support. (Doc. 22). Defendant's Motion is ripe.

## I.  BACKGROUND

Plaintiff International Paper Company ("IPC") is a New York corporation with a

principal place of business in Memphis, Tennessee. (Doc. 1, PAGEID 1). xpedx is a

division of IPC that does business throughout the United States and maintains its

headquarters in Loveland, Ohio. (Doc. 1, PAGEID 1-4). xpedx includes two specialty

brands, one of which is Strategic Paper Group ("SPG"), which maintains its headquarters

in New York City, though it also maintains offices throughout the United States.  (*Id.*)

xpedx acquired SPG in 2007.  (Doc. 19-1, PAGEID 173).

Plaintiff David Goldschmidt ("Goldschmidt"), a California resident, was an

employee of SPG/xpedx.  (Doc. 1).  Goldschmidt's employment with SPG began in 2000

and continued after xpedx acquired SPG in 2007.  (Doc. 1, Doc. 19-1).  Throughout his

employment, Goldschmidt resided in and worked from California.  (Doc. 1).  In May

2007, Goldschmidt assumed responsibility for the west region of SPG.  (Doc. 19-1,

PAGEID 189).  Effective January 1, 2009, Goldschmidt was promoted to Vice President

of SPG.  (Doc. 19-1, PAGEID 186, 189).  In that position, he functioned as the general

manager of SPG's western region and participated in xpedx's management incentive plan.

(Doc. 1, PAGEID 2).

As Vice President of SPG, Goldschmidt possessed access to confidential and trade

secret information.  In consideration and as a condition of employment, Goldschmidt

executed an Employee Agreement Concerning Inventions, Intellectual Property,

Confidential Information and Conflict of Interest ("Confidentiality Agreement").

Beginning in mid-2011, Goldschmidt was asked to participate with a group of

seven other xpedx managers on xpedx's Directed Buy team to address xpedx's future

strategy for its direct buy business.  Goldschmidt's participation on the Directed Buy team

included frequent communication with xpedx members in Ohio via email

communications, videoconferencing and teleconferencing.  Members of the Directed Buy

team also had access to a password protected xpedx website.  In addition to

2

communications by email, video, phone and websites, between May and October 2011, Goldschmidt attended Directed Buy meetings in person in Ohio.

In mid-October 2011, IPC contends that Goldschmidt began meeting with and discussing with xpedx sales professionals he supervised the topic of leaving xpedx and going to work for a competitor company, Midland Paper Company ("Midland"). Soon thereafter, Goldschmidt and these sales professionals purportedly met with Midland in Chicago, Illinois. On December 14, 2011, Goldschmidt abruptly resigned his position as Vice President of SPG and informed xpedx that he had accepted a position with Midland. Six other xpedx employees under Goldschmidt's direct or second-level supervision also resigned their positions with xpedx to purportedly work for Midland.

IPC now brings suit alleging that Goldschmidt: (1) breached the Confidentiality Agreement by virtue of his employment with Midland; (2) violated the Ohio Uniform Trade Secrets Act, Ohio Rev. Code § 1361.61 *et seq*., by allegedly disclosing IPC's trade secrets; (3) breached fiduciary duties owed to IPC; and (4) breached a duty of loyalty owed to IPC.

## II. PERSONAL JURISDICTION

Goldschmidt moves dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(2), arguing that he maintained sporadic, tenuous and insignificant contacts with Ohio, and, therefore, this Court lacks personal jurisdiction over him under Ohio's long-arm statute and the Due Process Clause of the U.S. Constitution. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists."

3

*Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir.2003) (citing *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir.2002)); *see also Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002); *Schneider v. Hardesty*, 669 F.3d 693 (6th Cir. 2011).

In cases where plaintiff seeks to invoke this Court's jurisdiction on the basis of diversity, the Court must "examine the law of the forum state to determine whether personal jurisdiction exists." *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 361 (6th Cir. 2008) (citing *Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir.2000)). If Ohio law authorizes jurisdiction over Defendant, the Court must then "determine whether that authorization comports with the Due Process Clause of the Fourteenth Amendment." *Id*. (citing *Brunner v. Hampson*, 441 F.3d 457 (6th Cir. 2006); *see also Schneider*, 669 F.3d at 699 (stating that because "Ohio's long-arm statute is not coterminous with federal constitutional limits[,]" plaintiff "must demonstrate that both due process and Ohio's long-arm statute are satisfied").

In the absence of an evidentiary hearing, plaintiff's "burden is merely that of making a *prima facie* showing that personal jurisdiction exists[,]" and the court "must consider the pleadings and affidavits in the light most favorable to the plaintiff." *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citations omitted). Where, however, "'plaintiff has received all of the discovery it sought with respect to personal jurisdiction and there does not appear to be any real dispute over the facts relating to jurisdiction,' the prima facie 'proposition loses some of its significance.'" *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012) (citations omitted).

Here, neither party requested an evidentiary hearing, and while IPC was granted leave to depose Goldschmidt, such deposition apparently never occurred.  Accordingly, the Court will employ the standard requiring IPC to make a *prima facie* showing of personal jurisdiction.

### A.     Ohio's Long-Arm Statute

IPC contends that Defendant is subject to Ohio's long-arm statute, Ohio Rev. Code § 2307.382, as a result of Defendant causing tortious injury in Ohio and/or by transacting business in Ohio.  Specifically, Ohio's long arm statute provides that:

> A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> (1) Transacting any business in this state;
>
> . . .
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

Ohio Rev. Code § 2307.382(A)(1) and (4).

The term "transact" used in subsection (A)(1), "encompasses 'to carry on business' and 'to have dealings,' and is broader than the word 'contract.'" *Contech Bridge Solutions, Inc. v. Keaffaber*, No. 1:11-cv-216, 2011 WL 5037210, at *7 (S.D. Ohio Oct. 24, 2011) (citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 638 N.E.2d 541 (Ohio 1994); *Ky. Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d

477 (Ohio 1990)).  Subsection (A)(4) of Ohio's long-arm statute requires two things: "(1) a tortious injury must occur in Ohio; and (2) defendant must have conducted a regular course of business in Ohio, or have collected substantial revenues from activities in the state."  *Weiskopf Industries Corp. v. Hidden Valley Towel, Inc.*, Case No. 67436, 1994 WL 716342 (Ohio App. Dec. 22, 1994) (citations omitted).  In support of IPC's contention that jurisdiction is proper under subsections (A)(1) and (4), IPC relies primarily on two cases: *Coast to Coast Health Care Services, Inc. v. Meyerhoffer*, No. 2:10-cv-734, 2012 WL 169963 (S.D. Ohio Jan. 19, 2012); and *The Rightthing, LLC v. Brown*, No. 3:09CV135, 2009 WL 249694 (N.D. Ohio 2009).

In *Meyerhoffer*, plaintiff brought suit in Ohio against two former employees, one of whom resided in Utah, after the employees "established . . . a competing business[.]" *Id*. at *1.  There, the court found that plaintiff made a *prima facie* showing of personal jurisdiction over the Utah defendant under subsections (A)(1) and (A)(4) where: (1) plaintiff was an Ohio corporation with its principal place of business in Ohio; (2) plaintiff negotiated defendant's employment contract over the phone from Ohio; (3) plaintiff provided defendant with "software, programming, and other tools" needed "to carry out her employment" with plaintiff; (4) "secretly conspired to start a competitor company and utilized plaintiff's . . . client lists, prospective client lists, and independent contractor physician provider lists;" and (6) defendant was paid for work by plaintiff from Ohio and reported directly to a supervisor in Ohio.  *Id*. at *3.

In *The Rightthing*, plaintiff, a company with a principal place of business in Ohio, sued defendant, a lifelong California resident, in Ohio following defendant's resignation from employment with plaintiff. *Id*. at *1. Following defendant's personal jurisdiction challenge, the court concluded that subsection Ohio Rev. Code § 2307.382(A)(4) was satisfied because: (1) defendant's allegedly tortious act involved accessing plaintiff's Ohio based computer system; (2) defendant was compensated by plaintiff, an Ohio business, for her work; and (3) plaintiff "regularly received reports, proposals, and agreements directly from [plaintiff's] Ohio headquarters and regularly accessed [plaintiff's] Ohio-based computer system." *Id*. at *4.

IPC argues that the facts here are akin to those in *Meyerhoffer* and *The Rightthing* because Goldschmidt: (1) worked for Ohio-based xpedx for over four years, including over three years as Vice President of its specialty brand, SPG; (2) accepted his promotion to Vice President of SPG by sending his acceptance by mail to xpedx human resources in Ohio; (3) reported to a second-level manager who was physically based at xpedx headquarters in Ohio; (4) regularly communicated with xpedx's Ohio-based employees through email and telephone; (5) regularly received reports and other documents from Ohio; (5) had specific access to an xpedx password protected website as a result of his involvement in xpedx's Directed Buy team; (6) physically met with members of xpedx's Directed Buy team in Ohio on at least two occasions; (7) assigned a customer in Ohio to a sales person and met with a xpedx supplier in Ohio, and (6) is now directly competing with xpedx by relying on information learned from xpedx in Ohio.

7

Goldschmidt disagrees with the suggestion that his employment with Ohio-based xpedx "is at least a step in [the] direction" of transacting business in Ohio. *See Keaffaber*, 2011 WL 5037210 at *7 (citing *The Rightthing,* 2009 WL 249694). He argues that xpedx is merely a division of IPC, a New York corporation that maintains its principal place of business in Tennessee, and that he specifically worked from California for SPG, a New York-based specialty brand of xpedx.

The convoluted nature IPC's corporate structure aside, the parties do not dispute that Goldschmidt's position fell within the Ohio-based xpedx division, that he accepted a promotion within that division, regularly communicated with xpedx personnel based in Ohio, and reported to an Ohio-based supervisor who was the Executive Vice President of xpedx. Further, Goldschmidt chose to participate as part of xpedx's Directed Buy team, and his participation involved regular communications with Ohio-based xpedx employees, physically attending meetings in Ohio on at least two occasions within the six months before his resignation, and maintaining access to certain password protected xpedx websites that "allow[ed] team members to easily share highly confidential documents and information." (Doc. 19-1).

IPC specifically alleges injury arising from Goldschmidt's participation as a member of xpedx's Directed Buy team, as well as his access to confidential information granted solely because he was a member of that team. (Doc. 1). IPC alleges that:

> Through his role on the Directed Buy Team, Goldschmidt was exposed to proprietary and/or confidential information not only for SPG and BD, but also all of xpedx. This included information about

8

> specific customers and employees to which he otherwise would not
> have been exposed.  In addition, Goldschmidt was involved in
> interviewing or in preparing summaries of interview of xpedx sales
> professionals, group vice presidents, sales managers, and customer
> service representatives to whom he would otherwise not have been
> exposed.  Goldschmidt was also given access to a SharePoint site
> which contained company confidential information regarding its
> directed buy strategy.

(Doc. 1, PAGEID 7).  This information, according to IPC, "will be of significant benefit to Midland, and xpedx will be significantly harmed to have a major competitor led by an individual with knowledge of such information."  (Doc. 1, PAGEID 9).

Based on the foregoing, IPC, at the very least, makes a *prima facie* showing that Goldschmidt's purported out-of-Ohio disclosure of confidential and trade secret information learned from and as a part of xpedx's Directed Buy team caused injury in Ohio to Ohio-based xpedx.  Further, in light of Goldschmidt's employment with Ohio-based xpedx for over four years, his regular contact with Ohio-based xpedx employees and officers, and his specific participation on xpedx's Directed Buy team, the Court concludes that IPC makes a *prima facie* showing that Goldschmidt regularly did business in Ohio and/or engaged in other persistent course of conduct in Ohio.  Finally, IPC makes a *prima facie* showing that its claims arise from Goldschmidt's contacts with Ohio.  *See* Ohio Rev. Code § 2307.382(C).

As a result, IPC has made a *prima facie* showing of personal jurisdiction under subsection (A)(4) of Ohio's long-arm statute. Accordingly, Goldschmidt's Motion to Dismiss for Lack of Personal Jurisdiction is **DENIED**.

9

### B.    Due Process Considerations

"Because Ohio's long-arm statute is not coterminous with the Due Process Clause," in addition to satisfying the long-arm statute, personal jurisdiction over Defendant must comport with due process.  *Keaffaber*, 2011 WL 5037210 at \*8.  A court may exercise specific jurisdiction over defendants "only if their contacts with Ohio satisfy [a] three-part test" set forth by the Sixth Circuit in *Southern Machine Company v. Mohasco Industries, Inc.*, 401 F.2d 374 (6th Cir.1968).  The test requires that:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Bird*, 289 F.3d at 874 (citations omitted).

"The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person."  *Schneider*, 669 F.3d at 701-02 (citations omitted).  The case of *Kelly Services, Inc. v. Noretto*, 495 F.Supp.2d 645 (E.D. Mich. 2007), while non-binding on this Court, presents similar factual circumstances as this case.

In *Noretto*, defendant worked for plaintiff, a Delaware corporation with its headquarters in Michigan, for approximately five years.  Defendant worked a "high level position" as "Regional Manager for [plaintiff's] Major Markets Division, working out of .

10

. . Portland, Oregon[.]"  *Id*. at 648, 653.  During his employment, defendant's "geographic area of responsibility included" counties in Oregon and Washington.  *Id*. at 648.  After five years of employment with plaintiff, defendant resigned and, shortly thereafter, began working for one of plaintiff's direct competitors.  *Id*. at 649.

Plaintiff sued defendant in Michigan alleging breach of a confidentiality agreement and violations of Michigan's Uniform Trade Secrets Act.  The district court there concluded that:

> Defendant purposefully availed himself of the privileges of conducting activities within the forum state when he became employed by a company headquartered in Michigan; entered into a non-compete, non-solicit, and non-disclosure agreement with [plaintiff]; entered into the Agreement containing a Michigan choice of law provision; continuously reported to supervisors working in Michigan; made several trips to Michigan for training purposes, and frequently used information stored on the company's Michigan based servers.

*Id*. at 653 (citing *Cole v. Mileti*, 133 F.3d 433 (6th Cir. 1998); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985); *Superior Consulting, Inc. v. Walling*, 851 F.Supp. 839, 844 (E.D.Mich.1994)).

Here, although Goldschmidt worked from California and managed SPG's western region, he accepted a promotion to a high level position within the Ohio-based xpedx division.  He also entered into a Confidentiality Agreement in consideration of and as a condition of his employment which encompasses information learned concerning xpedx.  Goldschmidt also frequently communicated with xpedx's Ohio-based employees and officers, including his second-level supervisor.  He frequently received confidential and

11

trade secret information from Ohio, including information learned as a member of xpedx's Directed Buy team, and maintained access to a password protected website containing confidential xpedx strategic information. Finally, between May and October 2011 alone, Goldschmidt twice visited Ohio to participate in xpedx strategic planning. Thus, IPC makes a *prima facie* showing that Goldschmidt purposefully availed himself of the privileges of conducting activities in Ohio.

The next question is whether Goldschmidt's actions in Ohio give rise to IPC's cause of action. "If a defendant's contacts with the forum state are related to the operative facts of the controversy, then an action will be deemed to have arisen from those contacts." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir. 1996) (citations omitted). This factor "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Bird*, 289 F.3d at 875 (citations omitted). Given the "lenient standard" courts are to apply, this test is satisfied where "the operative facts are at least marginally related to the alleged contacts between . . . defendants and Ohio." *Id*.

Here, the operative facts of IPC's claims are, at the very least, marginally related to Goldschmidt's acquisition of confidential and trade secret information through his contacts with Ohio, most notably through xpedx's Directed Buy team and access granted to a password protected xpedx website given only to members of that team. IPC specifically alleges that Goldschmidt's purported disclosure of such information will

12

cause xpedx significant harm. Accordingly, based on the foregoing, IPC has satisfied the second part of the test, *i.e.*, that Goldschmidt's contacts with Ohio are related to the operative facts of the controversy.

Finally, IPC must demonstrate that Goldschmidt, or the consequences of his alleged actions, "must have a substantial enough connection with [Ohio] to make the exercise of jurisdiction over the defendant reasonable." *Bird*, 289 F.3d at 874 (citations omitted). According to Sixth Circuit precedent, "where the first two criteria are satisfied, 'only the unusual case will not meet this third criterion.'" *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 628 (6th Cir. 1998) (citations omitted).

To determine reasonableness, the Court balances three factors, namely "'the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.'" *Fortis Corporate Ins. v. Viken Ship Mgmt.*, 450 F.3d 214, 223 (6th Cir. 2006) (citing *City of Monroe Employees Ret. Sys. v. Bridgestone*, 399 F.3d 651 (6th Cir.2005); *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 (1987)). "Even where it would undoubtedly burden a defendant to defend [him]self from a foreign state, 'when minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.'" *Meyerhoffer*, 2012 WL 169963 at *6 (citing *Youn*, 324 F.3d at 420).

Here, there is little question that defending himself in Ohio imposes a burden on Goldschmidt, a California resident. However, this case does not present one of those rare

13

instances where Defendant's contacts with the forum state are so minimal that such burden outweighs the interests of Ohio and an Ohio-based business. Thus, the third and final part of the test is satisfied.

### C. Personal Jurisdiction - Conclusion

Accordingly, the Court concludes that IPC satisfies its burden of showing of personal jurisdiction under Ohio's long-arm statute and that such jurisdiction comports with due process. Based on all of the foregoing, Goldschmidt's Motion to Dismiss for lack of personal jurisdiction is **DENIED**.

### III. VENUE

Next, Goldschmidt argues that the Court should dismiss the Complaint because venue is improper in the Southern District of Ohio. IPC contends that venue is proper pursuant to 28 U.S.C. § 1391(a)(2), which provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated[.]"

The issue presented under § 1391(a)(2) "is not whether this district is the 'best' venue, but whether the district has a 'substantial' connection to plaintiffs' claims, even if other districts have greater contacts." *Alltech, Inc. v. Carter*, No. 5:08-CV-00325-KKC, 2010 WL 988987, at *2 (E.D. Ky. Mar. 15, 2010) (citing *First of Mich. Corp. v. Bramlet*, 141 F.3d 260 (6th Cir.1998)). "[I]n determining whether events or omissions are sufficiently substantial to support venue" pursuant to §1391(a)(2), "a court should not

focus only on those matters that are in dispute or that directly led to the filing of the action[,]" but "[r]ather, it should review 'the entire sequence of events underlying the claim.'" *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004) (citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001); *First of Mich. Corp.*, 141 F.3d at 264.

In *Noretto*, a case presenting similar facts as those presented here, the court found venue was proper in the Eastern District of Michigan where:

> Defendant sought and gained employment with a company headquartered in Michigan. Defendant's employment required that he report directly to supervisors working in this district, and that he attend training in this district. Both actions, [Plaintiff] maintains, provided Defendant with the confidential information and trade secrets now at the center of this litigation. Additionally, Defendant acquired information subject to this suit by using [Plaintiff's] Michigan based servers. Finally, as part of Defendant's employment, he entered into a non-compete, non-solicit, and non-disclosure agreement with the Michigan company. It is that Agreement that is now central to this dispute.

*Noretto*, 495 F.Supp.2d at 655.

Here, while Goldschmidt became an employee within the division of xpedx originally by virtue of xpedx's acquisition of SPG, he later voluntarily accepted a promotion within the Ohio-based xpedx division and entered into a Confidentiality Agreement protecting confidential and trade secret information learned about xpedx. Goldschmidt also participated in developing xpedx future business strategy as a member if xpedx's Directed Buy team, which met in-person in Ohio at least twice during Goldschmidt's last six months of employment. As a member of the Directed Buy team,

Goldschmidt not only communicated regularly with xpedx Ohio-based employees, he maintained access to xpedx password protected websites containing confidential and trade secret information concerning xpedx business strategy. It is this confidential and trade secret information learned as a member of xpedx's Directed Buy team that appears to be substantially at issue in this case.

Based on the foregoing, the Court concludes that the Southern District of Ohio has a substantial connection to IPC claims, and, therefore, venue is proper in this district. Accordingly, Goldschmidt's Motion to Dismiss for Improper Venue is **DENIED**.

### IV. TRANSFER VENUE

Goldschmidt next argues that the Court should transfer the case to the United States District Court for the Southern District of California. "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

In considering a motion to transfer venue, courts give "[f]oremost consideration . . . to the plaintiff's choice of forum[,]" but in addition, must also consider "a variety of [other] factors, including the convenience of the witnesses, where the operative facts occurred, the location of the documentary evidence, and the possibility of prejudice in either the forum or the transfer state." *West Am. Ins. Co. v. Potts*, 908 F.2d 974, 1990 WL 104034, at *2 (6th Cir. Jul. 25, 1990). "A motion for change of venue is properly granted when the balance weighs strongly in favor of transfer." *Id*. (citations omitted).

Here, in assessing the factors based upon the current status of the record, and in giving foremost consideration to IPC's forum choice, the Court concludes that transfer is not warranted.  The present location of potential witnesses is largely unknown to the Court at this time.  Further, it is also unclear where documentary evidence is presently located; however, even if located in California, given the ease with which documents can be transferred electronically, this factor would not be overwhelming.  Finally, while certain facts underlying the claims likely occurred in California, other facts appear to have occurred in New York, Illinois and Ohio.

Thus, based on the information in the record before the Court at this time, Goldschmidt's Motion to Transfer Venue is **DENIED**.

## V.  MOTION TO DISMISS

Finally, Goldschmidt moves to dismiss claims alleging a breach of a duty of loyalty and fiduciary duty.  Goldschmidt contends that these common law claims are preempted by Ohio's Uniform Trade Secret Act ("UTSA") insofar as those claims allege misappropriation of confidential, proprietary and trade secret information of IPC. Goldschmidt further contends that employees do not breach a duty of loyalty or fiduciary duty by going to work for a competitor or soliciting other employees to work for that competitor.

With regard to Goldschmidt's first contention, courts in this district have concluded that the "UTSA preempts all claims based on misappropriation of information even if that information does not rise to the level of a 'trade secret.'"  *Miami Valley*

*Mobile Health Services, Inc. v. ExamOne Worldwide, Inc.*, --- F.Supp.2d ---, No. 3:11-cv-158, 2012 WL 441148, at *13 (S.D. Ohio Feb. 10, 2012).  As a result, "it is not necessary for the Court to determine whether the information in question constitutes a 'trade secret' before considering whether the common law claims are preempted."  *Id*. (citing *Allied Erecting & Dismantling Co., Inc. v. Genesis Equip. & Mfg., Inc.*, 649 F.Supp.2d 702 (N.D. Ohio 2009) (stating that "courts have generally found that the UTSA preempts 'all alternative causes of action for theft or misuse of confidential, proprietary, or otherwise secret information falling short of trade-secret status'").

In making the determination of whether a common law claim is preempted by the UTSA, the court examines the allegations to see "whether the facts supporting the common law claim are solely dependent on the same operative facts as the UTSA claim."  *Id*. (citing *Allied Erecting*, 649 F.Supp.2d at 721).  Where the supporting facts are the same, "then the claim is preempted."  *Id*.  Where "the common-law claim possesses an 'independent factual basis' separate from the factual allegations establishing a UTSA claim, then the portion of the claim supported by an independent factual basis survives preemption."  *Id*. (citing *Office Depot, Inc. v. Impact Office Prods.*, LLC, 821 F.Supp.2d 912, 921 (N.D.Ohio 2011); *Allied Erecting*, 649 F.Supp.2d at 724).

IPC's claims based on Ohio's UTSA allege that "confidential, proprietary and trade secret information constitutes protectable trade secrets[,]" and that "Goldschmidt's employment with Midland has caused, or inevitably will cause, him to disclose or improperly use [IPC's] trade secrets, including, but not limited to, [IPC's] sales and

18

marketing information, customer information, supplier, vendor and sourcing information, pricing data, and details regarding [IPC's] relationships with its customers." (Doc. 1).

IPC's common law claims generally set forth the same allegations, *i.e.*, that "Goldschmidt has breached, or is about to breach, his fiduciary duties by using, disclosing, and being in a position which will result in the unlawful disclosure of [IPC's] confidential, proprietary and trade secret information in breach of his Agreement" and "embarked upon a scheme to use and misappropriate [IPC's] confidential, proprietary and trade secret information." (Doc. 1). Insofar as IPC's breach of fiduciary duty and duty of loyalty claims are premised upon the same facts underlying IPC's UTSA claims, the common law claims are preempted by the UTSA.

However, IPC's breach of fiduciary duty claim also relies on the alleged fact that Goldschmidt used "his position at xpedx to solicit his subordinates to join a competitor, to fail to disclose a business opportunity to xpedx, to hide his plans from xpedx, to fail to report the plans of his subordinates, and to coordinate the abrupt departure of his subordinates from xpedx[.]" (Doc. 1). Goldschmidt contends that claims in that regard must be dismissed because an employee does not breach a duty owed to an employer by either resigning to work for a competitor, planning to do so or coordinating the departure of other employees.

"It is well-established that a corporate officer occupies a position of trust in relation to his corporation" and that "[s]uch relationship imposes upon directors duties in the nature of a fiduciary obligation." *Wing Leasing, Inc. v. M & B Aviation, Inc.*, 44 Ohio

App.3d 178, 542 N.E.2d 671, 676 (Ohio App. 1988) (citing *Thomas v. Matthews*, 94 Ohio

St. 32, 113 N.E. 669, 671 (1916); *Radol v. Thomas*, 772 F.2d 244 (6th Cir. 1985), *cert.*

*denied*, 477 U.S. 903 (1986).

    As noted by one court, "[o]fficers and directors have been found to have breached

their fiduciary duties when, while still employed by the company, they . . . fail to inform

the company that employees are forming a rival company or engaging in other fiduciary

breaches . . . [or] solicit fellow employees to join a rival business." *Foodcomm Int'l v.*

*Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted); *see also ProductiveMD, Inc.*

*v. 4UMD, LLC*, 821 F.Supp.2d 955, 964 (M.D. Tenn. 2011) (declining to dismiss a claim

alleging a breach of the duty of loyalty where allegations went "far beyond mere

preparation to compete," and instead, included allegations that the employee "solicited

[another] employee while still employed" by plaintiff).

    Ohio courts have not foreclosed recovery on claims alleging breach of fiduciary

duty or breach of loyalty where a business fiduciaries allegedly solicit co-workers to join

a competing enterprise while still an officer of the corporation. *See Miller Bros.*

*Excavating, Inc. v. Stone Excavating, Inc.*, No. 97-CA-69, 1998 WL 12646, at *11 (Ohio

App. Jan. 16, 1998) (granting summary judgment against a claim asserting that a former

vice president "violated his fiduciary duty . . . by interfering with his co-employees'

employment relationships while vice president of the company" because one allegedly

solicited employee "was already disgruntled . . . and had already decided . . . to seek

alternative employment[,]" and where other solicited employees "testified that they were

not solicited . . . before [the former vice president] effectively resigned"); *see also*

*Buckingham, Doolittle & Burroughs, LLP v. Bonasera*, 157 Ohio Misc.2d 1, 926 N.E.2d

375, 386-87 (Ohio C.P. 2010).

Based on the foregoing, Goldschmidt's Motion to Dismiss for failure to state a

claim is **GRANTED in part and DENIED in part**, as set forth *supra*.

## VI.  CONCLUSION

Accordingly, the Court **ORDERS** that Defendant Goldschmidt's Motion to:

(1) Dismiss for Lack of Personal Jurisdiction is **DENIED**; (2) Dismiss for Improper

Venue is **DENIED**; (3) Change Venue is **DENIED**; and (4) Dismiss for failure to state a

claim is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED**.


Date:   5/25/12   　　　　　　　　　　　 　   *s/ Timothy S. Black*
　　　　　　　　　　　　　　　　　　　　　Timothy S. Black
　　　　　　　　　　　　　　　　　　　　　United States District Judge

21